UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,                      No. 1:08-CR-47

    vs.                              Hon. Paul L. Maloney
                                         Chief United States District Judge

FRANK BRIAN AMBROSE,

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by United States Attorney Charles R. Gross and Assistant United States Attorney Hagen W. Frank, and submits its Sentencing Memorandum pursuant to LCrR 32.2(h).

### Sentencing Standards

Notwithstanding the decision in United States v. Booker, 543 U.S. 220 (2005), sentencing courts are still required to correctly compute the advisory Sentencing Guideline range and are still obliged to consider them when imposing sentence. United States v. Gale, 468 F.3d 929, 934 (6th Cir. 2006). Accordingly, a sentencing court's Guidelines calculations are still reviewed according to pre-Booker standards. United States v. Davidson, 409 F.3d 304 (6th Cir. 2005). It is now firmly established, however, that sentencing courts have the discretion to impose a sentence outside the advisory Guideline range based upon their articulated balancing of the statutory sentencing factors of 18 U.S.C. § 3553(a), the facts of the case, and the arguments of the parties. United States v. Lalonde, 509 F.3d 750, 769 (6th Cir. 2007) (citing United States v.

Gall, 128 S. Ct. 586 (2007)).  A sentencing court's overarching duty is to impose a sentence that is "sufficient, but not greater than necessary" to satisfy the statutory purposes of sentencing set out in 18 U.S.C. § 3553(a), id. at 770, and a sentence from within the Guideline range is presumed on review to be reasonable.  Rita v. United States, 127 S. Ct. 2456 (2007); United States v. Williams, 436 F.3d 706, 708 (6th Cir. 2006).

Government's Perspective

The Court has before it a lengthy and exhaustively detailed Presentence Investigation Report (PSR).  Because the portion of that report that describes the offense conduct is based almost entirely on an extremely detailed factual summary that Defendant stipulated to in his plea-agreement with the Government, the factual landscape for the sentencing is uncontested with respect to the offenses and the Government has little to add to it.[1]  However, even though the answer to the "who did what, when, and for what reason?" question may be clear, the Government thinks that the Court's task of crafting an appropriate sentence may be especially difficult in this case.

On the one hand, Defendant participated over a period of years in a series of premeditated, highly destructive, and at times dangerous acts of property destruction.  One of those acts in particular, the arson of Agriculture Hall at Michigan State University on Dec. 31,

---

[1] The Court may accept undisputed PSR assertions as findings of fact.  Fed. R. Crim. P. 32(i)(3)(A)

1999, cost more than money – it endangered lives[2] and, as explained at length in the victim-impact letter from the MSU General Counsel's Office, it had a long-lasting negative effect on the University's research community and its activities, activities for which Michigan State is world-renowned. (PSR at 12-13, para. 47). Further, all of these acts were committed for the express purpose of instilling fear in people and organizations who were engaged in lawful activities, of bullying and intimidating them on behalf of the "Earth Liberation Front" from doing things that Defendant and his ilk did not like, and of trying to influence the orderly conduct of government through coercion. Finally, everything Defendant did contributed directly to the significant law-enforcement problem posed by violent animal-rights and eco-defense fanaticism, a problem that was described in 2002 by the FBI's Domestic Terrorism Section Chief in testimony before Congress thus:

> During the past decade, we have witnessed dramatic changes in the nature of the [domestic] terrorist threat. In the 1990's, right-wing extremism overtook left-wing terrorism as the most dangerous domestic terrorist threat to the country. During the past several years, special interest extremism, as characterized by the Animal Liberation Front (ALF) and the Earth Liberation Front (ELF), has emerged as a serious terrorist threat.

The Threat of Eco-Terrorism (Feb. 12, 2002) (testimony of James F. Jarboe), available at
http://www.fbi.gov/congress/congress02/jarboe021202.htm

When this testimony was given, the FBI estimated that ELF and ALF had been responsible for approximately 600 criminal acts in the United States since 1996, causing

---

[2] Although Defendant is fully accountable for even the unforeseen consequences of something as inherently dangerous as arson, the Government does not maintain that Defendant meant for the fire to be as dangerous as it became. First, it seems unlikely that either Defendant or his co-defendant Marie Mason intended to cause an explosion in the room they were in while they were in it. Defendant and Marie Mason may have been committed to their cause, but they were not suicidal. Second, it would have made little sense for Mason to spray paint the ELF slogan "No GMO" on an interior wall if she and Ambrose had meant to burn the building down.

damages of over $43 million.  Id.  As stipulated to by Defendant, his own misconduct added well over $3 million to that total.  (PSR at 11, para. 46).  Moreover, at the same time that the FBI was educating Congress about the problem in 2002, Defendant was a full-fledged and active member/adherent of the ELF organization and movement.  Defendant's crimes were therefore not only extremely serious in their own right, they were also directly connected to the criminal trend that eclipsed right-wing extremism as the FBI's primary domestic terrorism concern during the decade that straddled the millennium.

On the other hand, Defendant voluntarily abandoned his violent extremism in about 2004, years before this prosecution commenced, he became a productive member of society, and he has done every thing he could to make amends for his past misconduct during the course of this prosecution.  Moreover, and to the extent that motive may ameliorate, Defendant's crimes were not motivated by a desire for personal profit or advancement.

### A Sufficient Sentence

On the issue of the appropriate quantum of punishment for Defendant, the Government submits that, due to the unusual nature of this case, the advisory Guideline range may be more helpful than usual as a guide in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing.  18 U.S.C. § 3553(a).  This is so because, unlike garden-variety offenses where a certain local norm or benchmark may have been developed that might serve as a standard of calibration, this case stands out as highly unusual because it involves a defendant who adopted warped and violent means in pursuit of an otherwise legitimate cause, environmentalism.  However, instead of trying to advance that cause through the political process and through the public advocacy that our free society allows in

broad daylight, Defendant chose to run around setting fire to things in the middle of the night.

Accordingly, and in light of the principle that the Guidelines represent an effort to do on the national level what district courts are obliged to do on the individual level, that is, to reconcile the § 3553(a) factors in a way that balances the "competing interests in consistency and individualized sentencing," this may be a case where the Guidelines are especially helpful in finding that balance. United States v. Vonner, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).[3]

From the Government's perspective, two of the § 3553(a) factors are of paramount importance in this case: the need to reflect the seriousness of the crime and to promote respect for law, and the need to provide adequate deterrence to those whose views about animal rights and environmental defense are so extreme that they become a justification for acts of property destruction that are almost always extremely costly and that sometimes, particularly as with arson, create a situation where only luck keeps other people from death or injury. The arson of Agriculture Hall at Michigan State University was a crime that falls squarely in this latter category.

---

[3] The Government offers one caveat to this argument, and this concerns the effect of the terrorism enhancement of USSG § 3A1.4. There is no question but that the enhancement applies to domestic as well as international terrorism offenses. See, e.g., United States v. Graham, 275 F.3d 490, 516 (6th Cir. 2001); United States v. Nichols, 169 F.3d 1255, 1270 n.3 (10th Cir. 1999). There is also no question but that it applies even where a defendant did not intend to physically harm another person, so long as he or she committed a "federal crime of terrorism" within the meaning of 18 U.S.C. § 2332b(g)(5), such as arson when done for the purpose of intimidating or coercing the conduct to government. However, when applied to a domestic offense that did not result in physical injury and was apparently not intended to cause a physical injury, the Government submits that the Court might reasonably conclude that, in light of the dramatic consequences of its application, § 3A1.4 has at least the potential to cause the seriousness of an offense to be overstated to some extent. If the Court elects to grant the full eight-level departure requested in the Government's § 5K1.1 motion, (Docket entry No. 146), which motion would produce a range of 100 to 125 months, then the Government's observation regarding § 3A1.4 becomes significantly less relevant in this case.

WHEREFORE, the United States requests the Court impose a sentence from within the advisory Guideline range, as that range is reduced according to the Court's action on the Government's USSG § 5K1.1 motion. In no event, however, does the Government seek imposition of a sentence that includes more than 120 months in prison.

                                                      Respectfully submitted,

                                                    CHARLES R. GROSS
                                                  United States Attorney

Dated: Oct. 13, 2008                          /s/   H.W. Frank
                                                  HAGEN W. FRANK
                                                  Assistant United States Attorney